**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**GRETCHEN C. NEUMANN**                                              **PLAINTIFF**

         v.              Civil No. 05-5155

**JOHN E. POTTER, POSTMASTER GENERAL,**
**UNITED STATES POSTAL SERVICE**                                     **DEFENDANT**

### O R D E R

Now on this 29th day of June, 2006, comes on for consideration defendant's **Motion For Summary Judgment** (document #10), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1.  Plaintiff Gretchen Neumann ("Neumann") alleges that she was subjected to a hostile work environment in retaliation for engaging in protected activity, and that she was discriminated against on account of her gender, while employed by the United States Postal Service ("USPS").

Defendant John Potter, the Postmaster General ("Potter"), denied the material allegations of the Complaint, and now moves for summary judgment.

2.  Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate

unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, 45 F.3d 262 (8th Cir. 1995). The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, 838 F.2d 268 (8th Cir. 1988).

3. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

* Neumann has worked as a clerk for the USPS since 1994.
* In 1998, Neumann filed a complaint against the USPS. This claim was settled and dismissed with prejudice by joint stipulation of the parties in 1999.
* Effective March 16, 2002, Neumann's position as the operator of a Flat Sorter Machine ("FSM") was abolished due to a reorganization at the Fayetteville Plant. Neumann then became an "unassigned regular," a position which is covered by Article 37.4 of the Collective Bargaining Agreement.
* Neumann sought EEO counseling and on July 21, 2003,

>   filed an Information for Pre-Complaint Counseling.
> * On October 6, 2003, Neumann filed a formal administrative complaint of discrimination.
> * On September 20, 2004, the EEO Appeals and Compliance section of the USPS ("USPS EEO") issued a Partial Acceptance Letter identifying Neumann's claims.
> * Following the completion of the administrative processing of her complaint, Neumann requested on March 10, 2005, that the USPS EEO issue a final agency decision ("FAD"). The FAD was issued on June 13, 2005, and concluded that Neumann had not been subjected to discrimination.

4. Potter first argues that Neumann has failed to exhaust her administrative remedies as to any claims that fall outside her EEO charge. Neumann concedes that the law disallows such claims, but points out that the scope of administrative charges is broadly interpreted. "Claims which are 'like or reasonably related to the substance of the charges' in the EEOC complaint are deemed administratively exhausted and are properly within the scope of the lawsuit." **Artis v. Francis Howell North Band Booster Ass'n, 161 F.3d 1178, 1183 (8th Cir. 1998).** Neumann contends that all of the conduct she now complains of falls within this description, and should be deemed a proper part of her administrative charge.

Potter attached to his Motion documents that reflect the

following chronology of events relating to the administrative processing of Neumann's claims:

Neumann submitted an Information for Pre-Complaint Counseling on July 24, 2003, noting that she was alleging discrimination on the basis of sex and retaliation for prior EEO activity. The retaliation claim was fleshed out by stating that Neumann had "engaged in numerous EEO complaints" against Acting Plant Manager Mark Bush in the past, and that she believed her involvement in a pending case "caused the USPS to discriminate against me" by refusing to enforce a certain Memorandum of Understanding ("MOU")[1] by placing her in a Level 6 job. She stated that she had sent a certified letter to Bush asking his reasons for changing position on the MOU, but never received a response. She stated that refusal to enforce the MOU "cause[d] me hostile work environment due to my not being assigned to a job."

On October 9, 2003, Neumann filed an EEO Complaint of Discrimination in the Postal Service, alleging discrimination by Bush and "other unknown persons" on the basis of sex and previous

---

[1]The MOU was an agreement apparently worked out between the American Postal Workers Union and the USPS on how to reposition workers displaced by the phasing out of the FSM. While it figures prominently in the arguments now before the Court, neither party has furnished a copy of this document. It is, however, quoted in a letter from then Acting Plant Manager David Fisher to Neumann on October 27, 2003, as follows:

> If an unencumbered preference eligible employee is reached when assigning employees to lower level duty assignments in accordance with Article 37, Section 4.C.2.:
>     a. The most junior non-preference eligible same level clerk craft employee in the installation shall be reassigned to the lower level vacancy.
>     b. The unencumbered preference eligible employee will then be assigned to the duty assignment previously occupied by that junior non-preference eligible employee.

-4-

EEO activity. This was fleshed out with the same allegations as the Information for Pre-Complaint Counseling.

On November 10, 2003, the USPS EEO sent Neumann a document entitled Acceptance of Complaint, which stated that it had accepted for investigation only the following specific claim:

> June 17, 2003 she became aware that she would not be placed in a level 6 job as previously agreed on by management that was in accordance with section C of the National Memorandum of Understanding.

The Acceptance of Complaint form informed Neumann that if she did not agree with the "defined issue(s)," she had to object and support her objections with reasons within seven days. It further informed Neumann that unrelated issues had to be pursued through separate EEO proceedings.

On November 14, 2003, Neumann responded to the Acceptance of Complaint. She asked that a claim of hostile work environment be added to the investigation,

> in particular personal harassment I have received for up to a year by other employees related to the issue of my becoming an unassigned regular. . . . I have constantly complained for the past year to three supervisors, a postmaster and a plant manager about my hostile work environment. The reaction of all has ranged from complete inaction to a flippant retort of "I guess you'll just have to file an EEO complaint, or whatever you have to do."

Neumann also asked to add an additional charge, to-wit, that a male employee (Roy White) had been promptly scheduled for off-site training for a new job assignment, whereas she had not.

On February 18, 2004, Neumann requested to amend her EEO

-5-

complaint in eight additional respects:

- * That Roy White and a female employee had been allowed to begin work in new positions before off-site training for those positions, but Neumann had not.
- * That Neumann had been refused training for a night-shift Level 6 position as "Tour-1 Expeditor" with the explanation that it would be wasted as she would be going to Tour-3.[2]
- * That Neumann had been skipped on the overtime list from December 8, 2003, until she complained about it in February, 2004.
- * That an outdated "postal manual" was being used in a selective manner to Neumann's detriment in connection with the overtime issue.
- * That Neumann was being "abused and harassed" by a 204-B supervisor (Devick).
- * That the USPS had accepted a grievance related to Neumann and the enforcement of the MOU, rather than forwarding the dispute to "Headquarters for review and disposition."
- * That Neumann had received no response to several FOIA requests directed to the plant manager.
- * That the Regional Director and the Area Director had

---

[2]"Tours" apparently correspond to "shifts."

failed to properly manage the facility to prevent Neumann from being subjected to retaliation for EEO activity.

With the exception of the first, all these complaints were said to be related to, and in retaliation for, prior EEO activity.

On February 23, 2004, Neumann requested to add still another complaint to her case, i.e., that the American Postal Workers Union ("APWU") conspired with the USPS to deny her representation in connection with her attempts to obtain a Level 6 position using the MOU, by giving false information to the National Labor Relations Board ("NLRB").

On March 1, 2004, Neumann requested to add two more complaints to her case, i.e., that she had not received a change of schedule though two other employees similarly situated had, and that she had been denied FMLA paperwork.

On September 20, 2004, the USPS EEO generated a document entitled Acknowledgement [sic] of Amendment/Partial Acceptance/Partial Dismissal. This document stated that Neumann's EEO complaint was being revised, to comprise the following specific claims:

> (1) June 17, 2003 she became aware that she would not be placed in a level 6 job as previously agreed on by management that was in accordance with section C of the National Memorandum of Understanding (2) Subjected to a hostile working environment due to her prior EEO activity in that (a) February 5, 2004 she was denied a change of schedule (b) she was lied to and refused FMLA paperwork by her supervisor (d) November 2003 she was

denied overtime opportunity (e).

Explanation was given for why the case would not be amended to include Neumann's complaints about false information being given to the NLRB and lack of response to her FOIA requests, and Neumann was notified that if she did not agree with this formulation of the issues, she should object within seven days.

Neumann responded on September 26, 2004, with her reasons why the USPS EEO should reconsider its decision to exclude the two matters, but the Notice of Final Decision makes it clear that these matters were not included in the EEO investigation. No further requests for amendment were made.

It is clear from the foregoing that the EEO charge which forms a predicate for Neumann's claims before this Court encompasses her allegation that the USPS engaged in a continuing course of retaliation, i.e., that Neumann was alleging "hostile environment" rather than "discrete act" retaliation. The retaliation was said to be motivated by Neumann's engaging in protected activity, and to have been carried out by (a) refusing to place Neumann in a Level 6 position after her FSM job was abolished and (b) refusing to control the behavior of co-workers who took umbrage that she was temporarily assigned to their jobs.

The Court finds the foregoing sufficient to support Neumann's claim of retaliation in this case. Neumann need not detail every act in that course of conduct in either her EEO charge or her

Complaint.  **Cheek v. Western and Southern Life Ins. Co.**, **31 F.3d 497, 500 (7th Cir. 1994)**.

The EEO charge will also support Neumann's claim of sex discrimination, albeit only marginally.  While sex discrimination is asserted therein, the only factual allegation that would support it is the claim that a male was promptly assigned to training while Neumann's training was delayed.  Setting aside any concerns that this may not be sufficient to go forward on the claim of sex discrimination, the Court finds that the EEO charge is sufficient as to that claim.

For these reasons, the Court concludes that summary judgment is not appropriate on the basis of Potter's failure to exhaust argument.

5.  Potter next argues that any allegation relating to conduct that occurred more than 45 days before Neumann sought EEO counseling on July 21, 2003, are barred by **29 C.F.R. §1614.105(a)(1)**.

> Before bringing discrimination claims, Title VII plaintiffs must exhaust available administrative remedies. Specifically, employees of federal government agencies who believe that they have been discriminated against must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter.  Such employees must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory.

**Bailey v. United States Postal Service**, **208 F.3d 652, 654 (8th Cir. 2000)**(internal citations and quotation marks omitted).

-9-

Neumann contends that her claims are timely because she was subjected to a series of discriminatory acts that constituted a continuing violation, and if any act which is a part of such continuing violation occurred within the 45-day period, the charge is timely. Her position is supported by **Jensen v. Henderson**, **315 F.3d 854 (8th Cir. 2002)**(hostile environment claim involves repeated conduct, and if any portion of such conduct occurs within the limitations period, the claim is timely).

**Jensen** relied on **National Railroad Passenger Corporation v. Morgan**, **536 U.S. 101, 105 (2002)**, which held that **42 U.S.C. §2000e-5(e)(1)** (which requires a Title VII claimant to file a charge within either 180 or 300 days "after the alleged unlawful employment practice occurred") precluded recovery for "discrete acts of discrimination or retaliation that occur outside the statutory period," but that

> consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.

**536 U.S. at 105.**

Based on **Morgan** and **Jensen**, it is clear that, to the extent Neumann alleges a continuing course of conduct, she need only show that some portion of that conduct occurred within 45 days before July 21, 2003. Thus, for example, the allegation that Neumann

was deprived of overtime opportunities in 2002, to the extent that it can be shown to be part of the continuing course of conduct, would not be barred by Neumann's failure to complain about it within 45 days.

To the extent that Neumann's claim is based on a discrete act of sex discrimination, she appears to have met the 45-day window. On November 14, 2003, she asked to add the claim that a male employee had been promptly scheduled for off-site training in October, 2003, which was different from how she was being treated.

For these reasons, summary judgment is not appropriate on the basis that any claim is time-barred.

6. Potter also contends that the conduct of which Neumann complains does not constitute a hostile work environment under existing law. He points out that to create a hostile work environment, conduct must be "so severe and pervasive as to alter a term, condition, or privilege of employment." **Scusa v. Nestle U.S.A. Co., Inc.**, **181 F.3d 958, 966 (8th Cir. 1999)**. Sporadic incidents, teasing, and rude comments by co-workers will not suffice. Courts are instructed to consider the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'." *Id.* The offensiveness of the conduct must be judged both subjectively and objectively. *Id.*

Potter analyzes Neumann's claim as one about a series of sporadic and isolated rude comments by co-workers. Neumann, however, analyzes it as one about her supervisors deliberately placing her in a long-term situation where such conflict was to be expected, and refusing to do anything to correct the co-workers who perpetrated it. When viewed from that perspective, the Court finds that a jury issue is made out on the hostile environment claim.

The parties agree that Neumann's Level 6 job on the FSM was abolished effective March 16, 2002. As of March 1, 2004, Neumann was still contending to the USPS EEO that she had yet to be granted a change of schedule or training for a Level 6 position to which she was assigned the previous October.[3] Neumann testified that during the two years between her Level 6 jobs, although she continued to be paid at the rate of a Level 6 employee, she did not work in a Level 6 position, being relegated instead to less-skilled Level 5 work even when there was Level 6 work available. She was also required to work a different shift (night shift) than the one she had left (day shift). She testified that the effect of these changes was that she "was just pretty much the shift Cinderella and had to go clean up a lot of other people, which made those people mad because I'm a very good worker," and that as a result, she became "an outcast and not just a passive outcast

---

[3]The Complaint alleges that Neumann received a change of schedule and began training for the Bulk Mail Technician position on April 16, 2004.

but an active outcast with comments from people, bullying, physical bullying."[4] She testified that her complaints about the bullying did not bring results.

The Court believes that being wrongly required to work - for two years - in lower level positions, and to put up with conflict created by those who were permanently assigned to those positions, could be found to constitute the creation of a hostile work environment. The Court thus concludes that a jury issue exists as to whether a hostile work environment was created by the conduct of Neumann's supervisors.

7. Potter also contends that Neumann cannot show she suffered the type of adverse employment action necessary to support a claim for retaliation or sex discrimination. The Court has already determined that Neumann's retaliation claim is not a claim based on discrete adverse employment action, but rather on a continuing course of conduct. This argument is thus, as to the retaliation claim, unavailing.

The issue is closer when it comes to the sex discrimination claim, in part because the facts which might go to support that claim are poorly developed at this point. The sufficiency of such

---

[4]For example, Neumann testified that after she became an unassigned worker, Noe required her, for several hours a night, to do the work of J.W., an unskilled worker, who was having job problems and who was resentful that she was doing his job. She testified that her complaints about J.W.'s attitude met with little response. She also testified that there were others who were "hostile about me working in their area, hostile about me performing their duties," and that she complained about it to three different supervisors, whose "reaction has all ranged from complete inaction to a flippant retort of, 'I guess you'll just have to file an EEO complaint'."

evidence was not challenged on the pending Motion, however, and the Court believes that it is possible the evidence could present a jury issue based on adverse action on the sex discrimination claim. Among adverse employment actions listed in cases collected in **Scusa** are decrease in title, salary or benefits; tangible change in duties or working conditions; an ultimate employment decision such as termination, demotion, reassignment; actions that disadvantage or interfere with the employee's ability to do her job; papering of the employee's file with negative reports and reprimands; and transfers involving changes in pay or working conditions. **Scusa**, *supra*, **181 F.3d at 969.** A jury might conclude that plaintiff was required to suffer changes in her duties and working conditions when her supervisor failed to grant her a change of schedule and training for the new Level 6 position for several months. Summary judgment on this basis will, therefore, be denied.

8. Potter brings up, in his Motion, the fact that the APWU disagreed with the USPS on how the MOU was to be interpreted; that Neumann has complained that a postal worker gave false information about her to the NLRB; and that the USPS failed to properly respond to certain FOIA requests. Potter seeks summary judgment on these "claims." The Court does not perceive these to be "claims," however, but rather pieces of information which might go to support the claim that a hostile work environment was created.

Whether such information should be allowed into evidence is a matter that must be determined in the context of the trial, and the Court declines to issue any ruling as to them at this point.

9. Potter also contends that Neumann made more money working on the night shift than she would have made working on the day shift, due to a pay differential, and therefore is not entitled to any lost pay. Neumann counters this argument by contending that she is entitled to another pay differential, based on being required to work "out of schedule," and that when this differential is factored in, she is entitled to money damages. A jury question exists as to this issue.

10. Finally, Potter contends that Neumann's claim for punitive damages must be dismissed, because punitive damages are not recoverable against governmental defendants pursuant to **42 U.S.C. §1981a(b)(1).** Neumann does not contest this portion of Potter's Motion, and it will be granted.

**IT IS THEREFORE ORDERED** that defendant's **Motion For Summary Judgment** (document #10) is **granted in part and denied in part**. The Motion is granted insofar as it seeks dismissal of Neumann's claim for punitive damages, and denied in all other respects.

**IT IS SO ORDERED.**

                                                **/s/ Jimm Larry Hendren**
                                                **JIMM LARRY HENDREN**
                                                **UNITED STATES DISTRICT JUDGE**